**In re Kevin ADELL, Debtor.**

**No. 9:03–BK–23684–ALP.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Jan. 31, 2005.

Ralph E. McDowell, Bodman, Longley & Dahling, LLP, Detroit, MI, for Debtor.

T. Patrick Tinker, Office of the U.S. Trustee, Tampa, FL, for Trustee.

## ORDER ON AMENDED MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

### (Doc. Nos. 186 and 212)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

THIS IS the next and certainly not the last major battle between Kevin Adell (the "Debtor") and his primary and only antagonist, John Richards Homes Building Co., L.L.C. ("JRH"). The immediate matters under consideration and presented for this Court's consideration are (1) Creditor John Richards Homes Building Company, L.L.C.'s Amended Motion for Summary Judgment on its Objections to Debtor's Claim of Exemptions, (Doc. No. 186), and (2) the Debtor's Cross–Motion for Summary Judgment Regarding Objection to Exemptions Filed by John Richards Homes Building Co., L.L.C. (Doc. No. 212).

In order to highlight the key points controlling both Motions, it is appropriate to briefly recap the events preceding and leading up to the consideration of these Motions.

## BACKGROUND

On June 24, 2002, the Debtor filed an Involuntary Petition against JRH in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division (the "Michigan Bankruptcy Court").

On July 15, 2002, the Michigan Bankruptcy Court entered an order and dismissed the Involuntary Petition. The Michigan Bankruptcy Court, in its Order of Dismissal, reserved jurisdiction for the consideration of any request for compensatory and punitive damages and for attorney fees. After the conclusion of an evidentiary hearing on the Motion for Sanctions filed by JRH, the Michigan Bankruptcy Court issued its Memorandum Opinion on April 25, 2003, (the "Sanctions Order").

In the Sanctions Order, the Michigan Bankruptcy Court determined that "John Richards Homes Building Co., L.L.C., shall recover from Kevin Adell compensatory damages in the amount of $4,100,000; punitive damages in the amount of $2,000,000; and attorney fees and costs in the amount of $313,230.68, plus interest at the statutory rate." The award was based on the Michigan Bankruptcy Court's determination that the Debtor, Kevin Adell, had filed an Involuntary Petition against John Richards Homes Building Co., L.L.C. in bad faith, and that sanctions for the bad faith filing were, therefore, warranted pursuant to Section 303(i) of the Bankruptcy Code.

The Debtor arrived in Naples, Florida, on May 5, 2003. On May 6, 2003, the Debtor engaged the services of a real estate broker to assist him in the purchase of a home. On May 7, 2003, the Debtor signed a contract to purchase the home located at 636 14th Avenue South, Naples, Florida 34102 (the "Homestead"). On May 8, 2003, two weeks after the entry of the Sanctions Order in Michigan, the

Debtor purchased the home in Naples, Florida, for the approximate purchase amount of $2,800,000 and took legal title to the Homestead by Warranty Deed.

Following the purchase of his Homestead on May 8, 2003, the Debtor immediately took various steps to establish his residency in Naples, Florida. The Debtor registered to vote in Florida; he registered his automobile in Florida; he obtained a fishing license and also obtained a Florida driver's license. The Debtor opened and maintained several bank accounts in the State of Florida with the Community National Bank in Naples, Florida; Atlantic State Bank, Naples; and Huntington Bank, Naples, Florida. The Debtor closed all of these accounts postpetition and the funds were transferred to the Debtor's debtor-in-possession account at Huntington Bank, Naples, Florida. The Debtor also developed a new business venture in the State of Florida and formed a Florida not-for-profit company. On August 23, 2003, the Cuban Cultural Heritage Alliance was notified by the Florida Department of Agriculture and Consumer Services that it had complied with the registration requirements of Chapter 496, Florida Statutes, the Solicitation and Contribution Act. The name Cubana One Network was registered as a fictitious name with the Florida Department of State on September 2, 2003.

On May 12, 2003, the Michigan Bankruptcy Court entered the Order Granting JRH's Motion for Post–Judgment Relief, including an injunction prohibiting Kevin Adell from transferring assets (the "Post–Judgment Order"). In the Post–Judgment Order, the Michigan Bankruptcy Court prohibited the Debtor from (1) any type of transfer of any type of asset other than in the ordinary course of business, (2) depositing any assets with any-off shore institu-

tion, and (3) transferring any non-exempt property into exempt property.

The Debtor on May 19, 2003, filed a Complaint for Declaratory Relief in the Circuit Court in and for Collier County, Florida, seeking determination that the property he just purchased in Naples, Florida, qualified for the protection granted to homestead by Article X, Section 4 of the Florida Constitution. JRH removed the declaratory relief action to the Bankruptcy Court for the Middle District of Florida, even though at that time there was no bankruptcy case pending in this District. JRH promptly filed a Motion to Transfer the removed action to the Michigan Bankruptcy Court, which was granted, and the suit was transferred to the Michigan Bankruptcy Court on June 9, 2003.

On May 21, 2003, JRH filed a Motion for Miscellaneous Post–Judgment Relief and sought an order from the Michigan Bankruptcy Court to force a sale of the Naples, Florida, residence of the Debtor. The Debtor, who claimed that the home was Homestead and could not be reached by creditors of the homeowner, resisted the Motion. JRH also requested an order requiring the Debtor to turn over certain personal property to the U.S. Marshal. Additionally, JRH sought an order requiring the Michigan Secretary of State to record liens on several of the Debtor's vehicles.

On May 29, 2003, JRH recorded in the Official Records of Collier County, Florida, the Sanctions Order and Certification of Judgment for Registration in Another District issued by the Michigan Bankruptcy Court May 16, 2003. JRH's Certification of Judgment for Registration in Another District can be found in document Nos. 3192622 at OR: 3302 PG: 2835 and 3192623 at OR: 3302 PG: 2859 of the Official Records of Collier County, Florida.

On July 3, 2003, JRH filed a Judgment Lien Certificate indicating Kevin Adell as the Judgment Debtor, with a mailing address of 636 14th Ave., S. Naples, Florida, 34102, with the Secretary of State, for the State of Florida. The State of Florida recorded the judgment lien filed on July 3, 2003, reflecting the Debtor, Kevin Adell, as the Judgment Debtor on lien document number J03000206245.

On August 29, 2003, JRH filed an Affidavit Regarding Judgment Creditor's Address, which was recorded for the first time in the Official Records of Collier County, Florida.

On September 17, 2003, the Michigan Bankruptcy Court entered an Order (the "Homestead Order") that the home the Debtor had purchased in Naples, Florida, did not qualify as homestead because (1) whatever homestead statutes are in Florida are trumped by Section 303(i) of the Code; and (2) the Debtor did not qualify for homestead because he was not a *bona fide* resident of Florida. The Michigan Bankruptcy Court ordered the Debtor to sell the Naples, Florida, home within 60 days and directed the Debtor to turn over some other properties to the U.S. Marshal. The Debtor did not sell the Homestead but turned over a gold Rolex watch and gold money clip to the U.S. Marshal, which were sold.

The Debtor promptly appealed the Homestead Order and filed a Motion for Stay Pending Appeal. The Michigan Bankruptcy Court denied the Motion. On October 14, 2003, approximately one month after the Michigan Bankruptcy Court had rendered its decision the Debtor filed an Emergency Motion for Stay Pending Appeal in the United States District Court, Eastern District of Michigan, Southern Division (District Court). Counsel for the Debtor neither in the Motion for Stay filed in the Michigan Bankruptcy Court nor the same Motion filed in the District Court, contended that the Debtor was unable to post a supersedeas bond.

On November 10, 2003, the District Court granted a Motion for Stay Pending Appeal, provided that the Debtor post a cash bond in the amount of $2.8 million. The District Court later amended the original Order and clarified that the bond could be in cash or a surety bond. Rather than post the bond, on November 14, 2003, three days before the expiration of the 60–day period, the Debtor filed his Petition for Relief under Chapter 11 in this Court, immediately triggering the operation of the automatic stay imposed by Section 362 of the Bankruptcy Code. On February 10, 2004, JRH attacked the Debtor's Chapter 11 Petition and sought a dismissal on the basis the Petition was filed in bad faith.

On May 28, 2004, this Court entered an Order which denied the Motion to Dismiss and the Amended Motion to Dismiss filed by JRH without prejudice (Doc No. 287). The Order provided "that the hearing to consider the Third Amended Disclosure Statement and all objections interposed shall go forward as scheduled on June 10, 2004, beginning at 11:00 a.m. Unless the Debtor can overcome the objections to the Third Amended Disclosure Statement or modify the Third Amended Disclosure Statement at the hearing to have the same approved by this Court and to have the Third Amended Plan set for confirmation, this case shall be dismissed."

On January 16, 2004, JRH filed its Objection to the Debtor's Claim of Exemptions (Doc. No. 97). On March 5, 2004, JRH filed its Amended Motion for Summary Judgment on its Objections to the Debtor's Claim of Exemptions (Doc No. 186). On March 8, 2004, the Debtor filed his Motion to Avoid Judicial Lien of John Richards Homes Building Co., L.L.C. (Doc. 193). On March 15, 2004, the Debt-

or filed Debtor's Cross–Motion for Summary Judgment Regarding Objection to Exemptions Filed by John Richards Homes Building Co., L.L.C. (Doc. No. 212). While the issues raised by these Motions were from time to time perfunctorily discussed, both Motions were never formally heard with proper notice and ruled on prior to the scheduled confirmation hearing.

On June 30, 2004, this Court entered its Order Overruling Objection to Debtor's Disclosure Statement; Approving Disclosure Statement; and Setting Confirmation Hearing for August 18, 2004 (Doc. No. 313). On October 27, 2004, this Court entered its Order and denied confirmation of the Debtor's Fourth Amended Chapter 11 Plan, as modified, (Doc. 455) and scheduled a hearing for November 18, 2004, to consider a dismissal or conversion of the Chapter 11 case to a Chapter 7 liquidation case.

On October 27, 2003, the Debtor obtained a Florida marriage license and married his fiancée, Joelle Lukasiewicz (Mrs. Adell), at the Debtor's Homestead on December 20, 2003. Mrs. Adell resigned from her position as a news reporter for WDIV in Detroit, Michigan, and permanently moved to Naples, Florida, on December 12, 2003. The Debtor listed his home in Michigan for sale with a broker, and the property was ultimately sold.

The Debtor on November 5, 2004, filed a Motion for Reconsideration of the Order Denying Confirmation; Motion for Permission to File and for the Court's Consideration of Second Plan Modification and Request for Hearing on November 18, 2004 (Doc. 461). On the same date STN.Com, Inc., and Adell Broadcasting Corporation also filed their Motion of Reconsideration of Order on Confirmation of Fourth Amended Plan and Request for Hearing on November 18, 2004 (Doc No. 460).

On December 16, 2004, this Court entered its Order abating ruling on the Motion of STN.Com, Inc. and Adell Broadcasting for Reconsideration of Order on Confirmation of Fourth Amended Plan and on the Debtor's Motion for Reconsideration of Order Denying Confirmation; Motion for Permission to File and for the Court's Consideration of Second Plan Modification, and also scheduled a hearing for January 5, 2005.

These are the relevant facts as established from prior evidentiary hearings, and by all the documents of record submitted by counsel for the Debtor and JRH to this Court prior to the final evidentiary hearing scheduled for January 5, 2005. Therefore, it is clear from this record that the facts relevant to the issue of the Debtor's right to claim homestead are without dispute and can be resolved as a matter of law.

In its Motion for Summary Judgment, JRH requests that this Court deny all of the Debtor's exemptions or, in the alternative, deny Debtor's exemptions in his Florida real estate, his personal property and his rights under the Franklin Z. Adell Children Funded Trust. In his Motion, the Debtor requests that this Court enter an order granting Summary Judgment in favor of the Debtor as to JRH's Objection to Exemptions; overrule JRH's Objections to Exemptions and allow the Debtor's claimed exemptions.

It is the contention of JRH that the Debtor's right to claim his residence in Naples as his Florida Homestead, thus it is protected by Article X, Section 4 of the Florida Constitution, has already been resolved and rejected by the Michigan Bankruptcy Court by its Homestead Order entered on September 17, 2003. According to JRH the Homestead Order operates as an absolute bar and prohibition to raise the issue of the Debtor's homestead claim

based on the doctrine of *res judicata* or, in the alternative, *collateral estoppel.* JRH points out that the Debtor never filed a Motion pursuant to F.R.B.P. 7052(b), requesting that the Michigan Bankruptcy Court amend its findings and amend the Judgment accordingly. Thus, the Order became a final, no longer appealable Order and established the law of the case which the Debtor cannot challenge collaterally.

In addition, JRH contends that the Michigan Bankruptcy Court by an Order entered on May 12, 2003, prohibited the Debtor to transfer, to dispose, to conceal, or to convert any non-exempt property into exempt property, and the Debtor violated this prohibition and, therefore, he has forfeited his right to the claimed exemptions. In the alternative, JRH contends that it is entitled to the imposition of a constructive trust or an equitable lien on the Debtor's residence in Naples, Florida.

On January 5, 2005, this Court heard extensive argument of counsel for JRH in support of its Objection to the Debtor's claim of exemptions and argument of counsel for the Debtor in support of the Debtor's claim of homestead exemption. Based on the record and arguments this Court now finds and concludes as follows.

## BINDING EFFECT OF THE HOME-STEAD ORDER OF THE MICHI-GAN BANKRUPTCY COURT

As noted earlier, on May 21, 2003, JRH filed a Motion for Post–Judgment Relief. JRH's Post–Judgment Relief Motion was specifically directed to the Debtor's Naples, Florida, residence which JRH sought to sell in partial satisfaction of its sanctions award. On September 17, 2003, the Michigan Bankruptcy Court entered its Homestead Order and ruled that the Debtor's residence in Naples, Florida, is subject to the claim of JRH, notwithstanding the homestead protection accord-

ed by Article X, Section 4 of the Florida Constitution. The Michigan Bankruptcy Court relying on the cases cited in its Opinion ruled that Section 303(i) of the Bankruptcy Code preempts the Debtor's state law claims. *See In re John Richards Homes Bldg. Co., L.L.C.,* 298 B.R. 591, 598 (Bankr.E.D.Mich.2003). Therefore, the Debtor's residence in Naples is immune from the homestead protection and shall be sold to satisfy, as least partially, the claim of JRH based on the Sanctions Order. The Michigan Bankruptcy Court ruled on the alternative ground that the Debtor was not a *bone fide* resident of the State of Florida, because he had no intention to reside in that State.

The cases cited by the Michigan Bankruptcy Court stood for the proposition that Section 303(i) preempts the "debtor's state law claims against the petitioning creditors after an involuntary bankruptcy petition is dismissed." *Id.* (citing *In re Reid,* 854 F.2d 156, 162 (7th Cir.1988); *In re Miles,* 294 B.R. 756, 759–60 (9th Cir. BAP 2003); *Glannon v. Garrett & Assoc., Inc.,* 261 B.R. 259, 263 (D.Kan.2001); *Koffman v. Osteoimplant Tech., Inc.,* 182 B.R. 115, 125 (D.Md.1995); *Mason v. Smith,* 140 N.H. 696, 672 A.2d 705, 708 (1996); *Raymark Ind., Inc. v. Baron,* 1997 WL 359333 (E.D.Pa.1997); *Sarno v. Thermen,* 239 Ill. App.3d 1034, 180 Ill.Dec. 889, 608 N.E.2d 11, 15–18 (1992); *Gene R. Smith Corp. v. Terry's Tractor, Inc.,* 209 Cal.App.3d 951, 257 Cal.Rptr. 598, 599–600 (1989)).

The holdings of these cases obviously have no relevance to the binding effect of the Homestead Order of the Michigan Bankruptcy Court based on the doctrine of *res judicata* or *collateral estoppel.* The cases cited by the Michigan Bankruptcy Court in its Homestead Order held nothing more and nothing less than that state law claims cannot be asserted by petitioning creditors after the involuntary case has

been dismissed. Therefore, to resolve this issue one should consider what is and what is not involved in the immediate issue pending before this Court.

In the present instance, the Debtor is not asserting any claims against JRH nor does the Debtor seek any affirmative relief against JRH. The Debtor is merely seeking to invoke his right to claim an exemption which is available to all debtors or individual debtors in bankruptcy based on Section 522 and local law when a particular state opted out of the federal exemptions pursuant to Section 522(b)(2)(A). In the case of *In re Storer*, 58 F.3d 1125, 1128, (6th Cir.1995), the Sixth Circuit held that the bankruptcy laws did not preempt the Ohio law establishing exemptions in bankruptcy because in 11 U.S.C. 522(b)(1), Congress explicitly granted the states the authority to regulate the bankruptcy exemptions that a debtor can claim.

The purpose of Section 303(i) was to compensate an entity who suffered damages as a result of an improperly filed involuntary petition. Although the relief granted under this Section is referred to as a sanction award, at times and in the last analysis, it is nothing but a money judgment entered by a court of competent jurisdiction in favor of the injured party. The judgment is usually composed of a compensatory element and a punitive damage award. One would be hard pressed to present a persuasive argument that this type of money judgment is different from any other type of money judgment entered in a civil action based on an intentional tort committed by a defendant. Such judgment would obviously never trump the exemption claimed by a debtor in a bankruptcy case.

This Court has no difficulty to accept the proposition that the homestead claim would be forfeited pursuant to the federal drug forfeiture law 21 U.S.C. 881(a)(7).

Thus, Florida homestead law was preempted by 18 U.S.C.1955(d) relating to a gambling forfeiture. *See United States v. 18755 N. Bay Rd.*, 13 F.3d 1493, 1498 (11th Cir.1994). It would take a quantum leap, indeed, to accept the proposition that a judgment based on a federal drug violation, federal gambling violation or in suits based on RICO, are legally the same as a sanction order entered which has its genesis in a proceeding in a bankruptcy case and has nothing to do with a violation of any criminal statutes.

For the reasons stated, this Court is satisfied that the decision in the Homestead Order of the Michigan Bankruptcy Court is unpersuasive and nonbinding and this Court is constrained to reject that it established the law of the case.

 JRH also seeks the alternative remedy of imposition of a constructive trust or an equitable lien on the Debtor's Naples, Florida, residence. Constructive trust under Florida Law is imposed to prevent unjust enrichment of one person at the expense of another as a result of fraud, undue influence, abuse and confidence or mistake in the transaction that originates the problem. *In re Maurer*, 267 B.R. 639, 651 (Bankr.M.D.Fla.2001); *citing, Binz v. Helvetia Florida Enterprises, Inc.*, 104 So.2d 124, 127 (Fla. 3rd DCA 1958). Equitable liens are imposed at times under extraordinary circumstances on the debtor's homestead and the courts must look to applicable state law when determining when an equitable lien is appropriate. *See In re Tsiolas*, 236 B.R. 85, 88 (Bankr.M.D.Fla.1999), *In re Diamond*, 196 B.R. 635, 639 (Bankr.S.D.Fla.1996). This Court has no difficulty to accept the proposition that if it is established by competent proof that the debtor who is claiming the homestead exemption acquired the homestead by fraudulently obtained funds or by embezzlement, it is appropriate to

impose an equitable lien and possibly, in the alternative, a constructive trust. However, the record in this case is totally devoid of any evidence that would warrant the conclusion that the Debtor in the instant case purchased his Naples, Florida, residence with embezzled funds or funds obtained through fraud. For this reason none of these alternative remedies sought by JRH have any merit.

## GENERAL PRINCIPLES GOVERNING EXEMPTION CLAIMS

The right to claim exemptions by an individual debtor is dealt with by Section 522 of the Bankruptcy Code. Subsection (b)(1) of Section 522 provides, in part, that an individual debtor may exempt from property of the estate: "property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize..."

Florida opted out from the newly created specific federal exemptions with the enactment of Section 222.01 of the Florida Statutes. Thus, debtors in Florida who meet the residence requirement under Section 522(b)(2)(A), are only entitled to claim exemptions under the laws of this State. This requirement determines what law is applicable, and provides that the entitlement to an exemption and the applicability of the local law is determined by the date of filing the Petition, controlled by the domicile of the debtor for the 180 days immediately preceding the date of the filing of the Petition, or for a longer portion of the preceding 180 days.

The most frequently litigated issue concerning the debtor's right to claim exemption usually involves the debtor's right to claim the protection of the homestead under Article X, Section 4 of the Florida Constitution. It is well established and it is a time honored principle of Florida's jurisprudence that the constitutional provisions dealing with homestead were founded upon considerations of public policy. They are designed to promote the stability and welfare of the State by encouraging property ownership and independence on the part of its citizens, but most importantly, by preserving a home where the family may be sheltered and live behind reach of economic misfortune. *In re Colwell*, 208 B.R. 85 (Bankr.S.D.Fla.1997); *In re Bubnak*, 176 B.R. 601 (Bankr.M.D.Fla.1994); *In re McAtee*, 154 B.R. 346 (Bankr. M.D.Fla.1993); *In re Ehnle*, 124 B.R. 361 (Bankr.M.D.Fla.1991).

It is also clear, however, that the protection afforded by the Florida Constitution and the statutes dealing with this subject is available only to citizens and residents of the states which opted out pursuant to Section 522(b)(2)(A) of the Code. The Code specifically provides that debtors may only exempt properties under local laws which are applicable on the date of the filing of the Petition in which the debtor's domicile has been located for 180 days immediately preceding the date of filing of the Petition, or for longer portion of such 180 day period than any other place.

Specifically, Section 522(b)(2)(A) provides as follows:

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed ... in paragraph (2) of this subsection... Such property is—(2)(A) any property that is exempt under Federal Law ... or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a

longer portion of such 180–day period than in any other place....

11 U.S.C. § 522(b)(2)(A).

■ In order to determine the Debtor's right to claim the protection of the Homestead this Court is required to determine (1) whether the Debtor was physically present in this State for the greater part of the 180 day period preceding the Petition date, and (2) whether the Debtor intended to remain in Florida indefinitely. *In re Sparfven,* 265 B.R. 506, 516 (Bankr. D.Mass.2001); *In re Lowenschuss,* 171 F.3d 673, 683 (9th Cir.1999), *cert. denied,* 528 U.S. 877, 120 S.Ct. 185, 145 L.Ed.2d 156 (1999); *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 49, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989); *In re Ring,* 144 B.R. 446 (Bankr.E.D.Mo.1992); *District of Columbia v. Murphy,* 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329 (1941); *In re Hodgson,* 167 B.R. 945 (D.Kan.1994).

■ It cannot be gainsaid that the burden of proof in a contested matter involving the debtor's right to claim the exemption is on the objecting party and unless the objecting party has been able to establish by competent preponderance of the evidence, the objection cannot prevail, and therefore, must be overruled. *In re Sparfven, supra.*

First, as noted earlier, this Court is constrained to reject the conclusion of the Michigan Bankruptcy Court that Section 303(i) trumps a right to exemption provided by local law. This Court is unable to find any authority in the Bankruptcy Code or in the Legislative history of the enactment of Section 303(i) or Section 522 which would warrant the conclusion that, notwithstanding the express provisions of Section 522, that the Homestead, even if it is homestead under local law, is still subject to any sanction award made pursuant to Section 303(i). Second, at the time of the

Sanctions Award, the Debtor was not involved as a debtor in any bankruptcy case.

The Michigan Bankruptcy Court recognized the absolute right of a Debtor to claim exemptions by stating in his Order:

"Plainly the Bankruptcy Code reflects a clear Congressional intent to permit the residents of a state who file for bankruptcy relief to take advantage of that state's exemptions, including, where appropriate, Florida's unlimited homestead exemption... The difference here is that Adell has not filed for bankruptcy relief. Therefore, the exemptions that he would be permitted if he were to file bankruptcy are irrelevant."

*In re John Richards Homes Bldg. Co., L.L.C., supra,* at 607.

■ The Debtor's right to claim Homestead exemption as outlined earlier is determined solely by the provisions of the laws of the State of Florida, by the legal status of his residence on the date of the commencement of the case, and the Debtor's compliance with the residence requirements of Section 522(b)(2)(A). This being the case, the record is clear that the Debtor resided, in fact, uninterrupted during the longer portion of the preceding 180 days of the commencement of his Chapter 11 case. The Debtor established his *bona fide* residence by registering to vote in Florida, registering his automobile in Florida, obtaining a fishing license and also obtaining a Florida driver's license.

Thus, this Court is satisfied that the Debtor has complied with the residency requirements of Section 522(b)(2)(A) and that he was and still is a *bona fide* resident of the state of Florida, thus, the Debtor is entitled to seek the protection of his Homestead under Article X, Section 4 of the Florida Constitution.

■ The constitutional protection of the Florida Homestead prevents an at-

tempt to seize the homestead to satisfy claims of a creditor other than the three specific exemptions stated in the Constitution itself. The Florida Constitution provides three exceptions which could be asserted against the homestead: (1) taxes owed by the homesteader, (2) obligation incurred by the owner which created the lien on the property, by consent, i.e., by contract, (3) claims on laborer and material men who contributed to the repair and improvement of the homestead are entitled to a lien under the Mechanics Lien Statutes for the State of Florida.

From time to time attempts have been made to expand these exemptions and remove the protection provided for by the Constitution in order to prevent a claim of a wrongdoing or, specifically, to prevent the debtor to purchase a homestead and pay-up mortgages in advance by utilizing nonexempt funds which the debtor converted with the specific intent to hinder, delay or defraud the creditor.

The Supreme Court of this State in *Havoco of America, Ltd. v. Hill*, 790 So.2d 1018 (Fla.2001) expressly rejected any attempt to enlarge the exemptions set forth in the Constitution. *Id.* At 1028. The Supreme Court held that while equitable jurisprudence did not create a fourth exception (fraud), it did not hesitate to invoke the equitable principles to reach beyond the literal language of the exceptions. *Id.* at 1028. *Havoco* involved a clear cut case of conversion of nonexempt property into exempt property which was used to purchase the homestead. JRH's reliance on a sentence in *Havoco* in which the Supreme Court stated that under extraordinary circumstances it might be appropriate to impose an equitable lien on the Homestead, is misplaced. As discussed earlier, this Court has no difficulty with this proposition; however, this record is totally devoid of evidence to warrant an imposition of an equitable lien on the Debtor's Homestead.

Article X, Section 4 of the Florida Constitution provides debtors broad protection from attachment by debtor's creditors of the debtor's homestead. *Englander v. Mills (In re Englander)*, 95 F.3d 1028, 1031 (11th Cir.1996). By virtue of the expressed provision of the Florida Constitution, a debtor must establish (1) that the debtor is a *"natural person"*, (2) that the person claiming the exemption is a Florida resident and has established that he made, or intended to make the real property at issue, his or her permanent *"residence"*, (3) the person claiming the exemption of homestead is the *"owner"* of the real property at issue, and (4) the property claimed as homestead is not in excess of acreage permitted by the Constitution, i.e., one-half acre within the boundary of a municipality or one hundred sixty acres of contiguous land located in the unincorporated areas of the municipality.

The Debtor purchased his residence in Florida by taking title to his Homestead by Warranty Deed on May 8, 2003. As of May 8, 2003, the Debtor has resided, and still does reside, in his Naples, Florida, home. The Debtor immediately began and has developed a new business venture in the State of Florida. On December 20, 2003, the Debtor married his fiancée, Joelle Lukasiewicz. He has retained Florida counsel, a Florida accountant and has physically been present in the State of Florida since May 2003. As noted earlier, the Debtor registered his automobile in Florida; obtained a Florida driver's license; registered to vote; and opened and maintained several bank accounts in the State of Florida.

Based on the foregoing this Court is satisfied that the Debtor had the intent to become a *bone fide* Florida resident, the Debtor's domicile has been located in Na-

ples, Florida for 180 days immediately preceding the date of filing his Petition; and the Debtor's home located in Naples, Florida, is therefore, exempt under Article X, Section 4 of the Florida Constitution.

In sum, this Court is satisfied (1) the Homestead Order entered by the Michigan Bankruptcy Court is not binding and does not operate as *res judicata*; (2) Section 303(i) of the Bankruptcy Code does not trump the constitutional protection of the Florida Homestead of a debtor; (3) that the Debtor is eligible for the benefits of homestead protection granted by Article X, Section 4 of the Florida Constitution and (4) the Debtor's residence in Naples, Florida, is immune and not subject to the claim of JRH's Sanctions Order.

Since there are no genuine issues of material fact, this Court is satisfied that the Debtor is entitled to a determination as a matter of law that his residence located in Naples, Florida is protected by the Florida Constitution.

Accordingly it is,

ORDERED, ADJUDGED, AND DECREED that Creditor John Richards Homes Building Company, L.L.C.'s Amended Motion for Summary Judgment on its Objections to Debtor's Claim of Exemptions (Doc. No. 186) be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor's Cross–Motion for Summary Judgment Regarding Objection to Exemptions Filed by John Richards Homes Building Co., L.L.C. (Doc. No. 212) be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that the Objection to Exemptions filed by John Richards Homes Building Co., L.L.C., (Doc. No. 97) be, and the same is hereby, overruled and the Debtor's claim of homestead exemption is allowed. It is further

ORDERED, ADJUDGED AND DECREED that the property located at 636 14th Avenue South, Naples, Florida, be, and the same is hereby, is exempt pursuant to Article X, Section 4 of the Florida Constitution.